2011 WY 127

**Francis WEBER, Appellant (Plaintiff),**

v.

**The STATE of Wyoming, Appellee (Defendant).**

No. S–10–0049.

Supreme Court of Wyoming.

Sept. 12, 2011.

Representing Appellant: Vance Countryman of Vance T. Countryman, P.C., Lander, Wyoming; Cynthia Van Vleet of Wind River Law Center, P.C., Riverton, Wyoming. Argument by Mr. Countryman.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; John W. Renneisen, Deputy Attorney General; Thomas W. Rumpke, Senior Assistant Attorney General. Argument by Mr. Rumpke.

Before KITE, C.J.*, and GOLDEN, HILL, and BURKE, JJ., and YOUNG, D.J.

* Reassigned to Chief Justice Kite on June 29, 2011.

1. Many of Mr. Weber's and the State's arguments pertain to the duty, breach of duty and proximate cause elements of Mr. Weber's negligence claim. *See, e.g., Union Pacific R.R. Co. v. Caballo Coal Co.*, 2011 WY 24, ¶ 19, 246 P.3d 867, 872 (Wyo.2011); *Sorensen v. State Farm*

KITE, Chief Justice.

[¶ 1]   Francis Weber was severely burned by hot mineral water when he lost consciousness in the steam room at the Star Plunge in Hot Springs State Park. He brought a personal injury action, naming C & W Enterprises, Inc., d/b/a the Star Plunge; a Star Plunge principal, Wolfgang Luehne; and the State of Wyoming as defendants.  The State moved for summary judgment on a number of grounds, including that it was immune from suit pursuant to the Wyoming Governmental Claims Act. The district court determined the State was immune and granted summary judgment in its favor, but did not rule on any of the State's other theories of non-liability.  Mr. Weber appealed.  We conclude the State's activities in Hot Springs State Park fall within the statutory waiver of immunity for operation and maintenance of a public park and, consequently, reverse and remand.

## ISSUE

[¶ 2]   Although Mr. Weber states a number of issues on appeal,[1] the only issue which is properly presented in this case is:  Did the district court err by ruling that the State was immune under the circumstances presented here because its activities did not fall within the waiver for operation and maintenance of a public park under Wyo. Stat. Ann. § 1–39–106 (LexisNexis 2011)?

## FACTS

[¶ 3]   The Star Plunge includes an outdoor pool, indoor pool, water slide, hot tubs, and a steam room called the Vapor Cave. The facilities are owned by the Star Plunge, but the underlying land is owned by the State as part of Hot Springs State Park and is leased to the Star Plunge.   The Star Plunge charges a fee to patrons for use of its facilities.

*Auto. Ins. Co.*, 2010 WY 101, ¶ 8, 234 P.3d 1233, 1236 (Wyo.2010).  The district court's decision and our ruling here are limited to the legal question of whether the Wyoming Legislature waived immunity for the State's actions in Hot Springs State Park. The other issues will have to be addressed on remand.

[¶ 4]  The State provides hot mineral water from Big Spring to the Star Plunge, as well as other concessionaires in the state park.  The State also owns and operates a heat exchange facility which cools some of the mineral water.  The Star Plunge is, therefore, provided with hot water directly from Big Spring and cooled mineral water from the heat exchange facility.

[¶ 5]  The Star Plunge built the Vapor Cave in 1976.  A fountain in the center of the Vapor Cave contains hot water directly from Big Spring; no cooled water is mixed with the hot water.  There are no barriers between the hot water in the fountain and patrons.  Mr. Luehne testified that the superintendent of Hot Springs State Park in the 1970s, Robert Johnstone, suggested that the Star Plunge build a steam room and provided advice on how to design and construct the Vapor Cave and fountain.

[¶ 6]  On September 8, 2006, Mr. Weber visited the Star Plunge.  He lost consciousness in the Vapor Cave and fell, landing in the hot mineral water.  He sustained severe burns to his hand, arm, face, and upper body.  Four of his fingers were so severely burned, they had to be amputated, and he underwent multiple skin grafts to his arm and upper body.

[¶ 7]  Mr. Weber initially brought suit against the Star Plunge and later submitted a governmental claim and amended his complaint to add the State as a defendant.  He claimed state employees were negligent in operating and maintaining Hot Springs State Park.

[¶ 8]  The State filed a motion for summary judgment, asserting it was immune from suit under the Wyoming Governmental Claims Act, Wyo. Stat. Ann. §§ 1–39–101 through 1–39–121 (LexisNexis 2011).[2]  Mr. Weber argued that Wyo. Stat. Ann. § 1–39–106, which waives immunity for "the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any . . . public park," applied to the State's activities in Hot Springs State Park.

2.  In addition, the State filed a motion for judgment on the pleadings, which also included an argument that it was immune from suit.  Be-

[¶ 9]  The district court held that § 1–39–106 did not waive immunity under the circumstances of this case and granted the State's motion for summary judgment.  Mr. Weber appealed.

## STANDARD OF REVIEW

[¶ 10]  Summary judgment motions are governed by W.R.C.P. 56(c):

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

We review a district court's summary judgment rulings *de novo*, using the same materials and following the same standards as the district court.  The facts are reviewed from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record.  *Cook v. Shoshone First Bank*, 2006 WY 13, ¶ 11, 126 P.3d 886, 889 (Wyo.2006); *Garcia v. Lawson*, 928 P.2d 1164, 1166 (Wyo.1996).

## DISCUSSION

[¶ 11]  The Wyoming Governmental Claims Act is a "close-ended tort claims act," meaning that the general rule in Wyoming, as stated in Wyo. Stat. Ann. § 1–39–104(a), is the government is immune from liability.  *City of Torrington v. Cottier*, 2006 WY 145, ¶ 7, 145 P.3d 1274, 1277 (Wyo.2006).  Therefore, unless a claim falls within one of the statutory exceptions to governmental immunity stated in Wyo. Stat. Ann. §§ 1–39–105 through 1–39–112, it is barred. *Id. See also, Newberry v. Board of County Comm'rs of Fremont County*, 919 P.2d 141, 145 (Wyo. 1996).

[¶ 12]  Mr. Weber asserted his claims fell within the waiver of immunity for operation and maintenance of a public park

cause the district court granted the motion for summary judgment, we will limit our discussion to that aspect of the proceedings.

found in § 1–39–106. Section 1–39–106 states:

A governmental entity is liable for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, recreation area or public park.

To resolve this case, we must interpret the statutory language. " 'Questions of statutory interpretation are matters of law.' " *State Dep't of Corrections v. Watts,* 2008 WY 19, ¶ 13, 177 P.3d 793, 796 (Wyo.2008), quoting *Chevron U.S.A., Inc. v. Dep't of Revenue,* 2007 WY 43, ¶ 10, 154 P.3d 331, 334 (Wyo. 2007). In interpreting statutes, our objective is to give effect to the legislature's intent. We start with the plain meaning of the language chosen by the legislature and apply that meaning if the language is clear and unambiguous. *Id.* "A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability." *RME Petroleum Co. v. Wyo. Dep't of Revenue,* 2007 WY 16, ¶ 25, 150 P.3d 673, 683 (Wyo.2007). All statutes relating to the same subject or having the same general purpose must be considered together, *in pari materia,* and construed in harmony. *State ex rel. Dep't of Revenue v. Union Pacific R.R. Co.,* 2003 WY 54, ¶ 12, 67 P.3d 1176, 1182 (Wyo.2003). When the wording of a statute is ambiguous or capable of varying interpretations, we employ well-accepted rules of statutory construction. *Chevron,* ¶ 10, 154 P.3d at 334.

[¶ 13] The district court's decision letter granting the State's motion for summary judgment, stated:

Considering the pleadings and other information filed by the parties in this case, this Court finds that Defendant State of Wyoming was neither "operating" nor "maintaining" a building, recreation area or public park, as those terms have been previously interpreted by the Wyoming Supreme Court, and that the State has not, therefore, waived its immunity. Further, this Court finds that Defendant State of Wyoming does not incur liability in this case by virtue of its status as owner and Lessor of the mineral water and real property on which the building owned by Co–Defendants C and W Enterprises, Inc. sits.

. . . .

In the *Watts* case . . ., the Court considered whether the plaintiff's claims pertained to the "operation" of a building. After considering the ordinary and obvious meaning of the term "operation," the Court concluded that § 1–39–106 waives immunity for the State's negligence in making a building functional. *Id.* at ¶ 21, 799. Ultimately, the Court determined that ". . . the context of § 1–39–106 within the WGCA indicates that the legislature intended the waiver to extend only to the function of the building itself rather than the entity operated within the building [as was argued by the Plaintiff in the *Watts* case]. If the legislature had meant to waive immunity for operation of a penal institution, it could have done so expressly." *Id.* at ¶ 23, 799. The court refused to ". . . expand the waiver of immunity to include matters not expressly stated by the legislature." *Id.*

This Court finds the *Watts* court's interpretation of "operation" as used in § 1–39–106 persuasive: The State in this case does not own the building, nor does it have any interest of any kind in the entity (the Star Plunge) that occupies the building. The legislature certainly did not intend to create a waiver of immunity to extend to the business operations of concessionaires in the State Parks. In this case, the State owns the mineral water that the Star Plunge leases and uses to operate its business, and that water is piped directly from the State's water facilities to the Star Plunge, but that ownership and delivery of water does not amount to "operation" of a building as it is defined above.

In interpreting the WGCA statutory exceptions to operations of a utility, the Wyoming Supreme Court did not expand the term "operation" to include the City's allegedly negligent authorization of iron water lines that later turned out to be unsatisfactory. [The district court was referring to *Sawyer v. City of Sheridan,*

793 P.2d 476 (Wyo.1990)]. The Sawyers in that case asserted that their claim falls within Wyo. Stat. Ann. § 1–39–108(a). The Court determined that a superficial analysis of that exception to immunity revealed that the claim asserted is not encompassed by that statute. The asserted wrongdoing on the part of the City of Sheridan does not spring from "operation" of a public utility. The claim is clearly one which asserts that the Sheridan City Council was negligent in adopting an ordinance which proved over time to be unsatisfactory or perhaps even ill-considered.

Similarly the allegation of negligent approval of the construction of the "Vapor Cave" steam room in this case is not the same as the negligent operation or maintenance of a building, recreation area or public park. Simply put, the State did not operate or maintain the steam room. Administering the State Park by allowing concessionaires to build, operate, and maintain a bath house with a steam room is not the operation or maintenance referred to in Wyo. Stat. Ann. § 1–39–106.

This Court also finds the Wyoming Supreme Court's interpretation of "maintenance" as it is used in Wyo. Stat. Ann. § 1–39–106 persuasive in this case. In *Soles v. State*, 809 P.2d 772 (Wyo.1991), Plaintiffs brought an action against the State claiming the State was negligent in its regulatory inspection of a stairway in which the Plaintiff fell and sustained injury. The District Court held the WGCA does not permit tort suits for negligent inspections of buildings and the Supreme Court affirmed. In its decision, the Supreme Court determined that "maintenance" as the term is used in § 1–39–106 should be given its plain and ordinary meaning, and the Court looked to the definition of the word in a well-known dictionary ("the labor of keeping something (as buildings or equipment) in a state of repair or efficiency: care, upkeep.") *Soles* at 773.

Any claim sounding in negligent oversight of the construction of the steam room, the water line or failing to require safety features as it pertains to both, must fail in that the State was neither "operating" [n]or "maintaining" the building, recreational area or public park when Plaintiff was injured. Since § 1–39–106 is inapplicable, the tort claims against the State for negligence are thus barred.

[¶ 14] The plain language of § 1–39–106 states immunity is waived for negligence in the "operation" or "maintenance" of a "public park." The term "operation" is not defined in the statute; thus, we use the ordinary and obvious meaning of the term.

The American Heritage College Dictionary 975 (4th ed. 2004), defines "operation" as the "state of being operative or functional." *See also* Webster's Ninth New Collegiate Dictionary 827 (1991). Black's Law Dictionary 1092 (6th ed. 1990), defines "operation" as "the process of operating or mode of action."

*Cottier*, ¶ 8, 145 P.3d at 1278.

[¶ 15] The district court relied on our decision in *Watts* to rule that the legislature did not waive immunity in § 1–39–106 for "business operations of concessionaires in [s]tate [p]arks." *Watts* involved a suit against the State after a nurse employed at the Wyoming Honor Farm was killed by an inmate. *Watts*, ¶¶ 3–4, 177 P.3d at 794. We interpreted the portion of § 1–39–106 that waives immunity for operation or maintenance of a "building" and stated that the waiver is limited to the State's negligence in making the building functional and, accordingly, applies only to unsafe conditions due to physical defects in the building. *Id.* at ¶¶ 21, 36, 177 P.3d at 799, 802. We distinguished the waiver of immunity for operation of a discrete "building" in § 1–39–106 from waivers of immunity for certain types of facilities, such as "hospitals" in § 1–39–109. We indicated that when the legislature grants immunity for facilities with a specific purpose, the waiver includes the activities undertaken within such facilities. Specific to the facts of *Watts*, the legislature did not waive immunity for operation of a penal institution, so the waiver only pertained to the physical attributes of the building, not the activities conducted therein. *Id.* at ¶ 23, 177 P.3d at 799.

[¶ 16] The present case involves the statutory language waiving immunity for opera-

tion of a "park," not a "building." The plain meaning of "park" is "a public area of land ... having **facilities for recreation**," *Webster's College Dictionary* 984 (1991), and "a piece of open land ... **with public amenities**." www.dictionary.com (emphasis added). As is clear from the standard definition of park, the word means more than the land itself; it includes whatever "amenities" and "facilities for recreation" the owner of the park chooses to incorporate. The rationale we used to limit the waiver of immunity for operation of a building in *Watts* does not apply to the waiver for operation of a park because, unlike operation of a building, operation of a park involves many different activities and amenities. As with the waiver of immunity for operation of a hospital referenced in *Watts*, the waiver of immunity for parks includes the activities undertaken by the State within the park facilities.

[¶ 17] This Court has employed similar reasoning in interpreting the waiver of immunity for operation of a "recreation area" in § 1–39–106. In *Newberry*, 919 P.2d at 146, we recognized that maintenance of a trestle on a trail fell within the waiver for a "recreation area," although we ultimately held the State was immune because Wyo. Stat. Ann. § 1–39–120 provided specific immunity for maintenance of a bridge within a recreation area. In *DiVenere v. University of Wyoming*, 811 P.2d 273, 274 (Wyo.1991), Ms. DiVenere was injured when she fell on ice on a concourse leading to the upper deck at the University of Wyoming's football stadium. Giving the statutory language its standard meaning, we held that the stadium was a recreation area and the ramps or concourses were part of that recreation area. *Id.* at 275–76. Thus, this Court's interpretation of "recreation area" included the facilities and amenities within the "recreation area."

[¶ 18] Reading Mr. Weber's pleadings broadly and interpreting the facts in his favor as required by our summary judgment standard, his allegations of negligence can fairly be divided into three categories: 1) negligence in delivery of the water to the Star Plunge;[3] 2) negligence in approving the design and construction of the Vapor Room; and 3) negligence in failing to properly oversee the property and/or inspect for safety concerns and require correction of the same. The district court lumped the allegations together as "business operations of a concessionaire;" however, it is clear that Mr. Weber was alleging state employees were negligent in how they conducted business with the Hot Springs State Park concessionaires. Compare, *Seal v. Carlsbad Indep. School Dist.*, 116 N.M. 101, 860 P.2d 743, 744–48 (1993) (holding suit could be brought against the school district for its direct negligence in failing to prevent a hazardous condition created by a third party who used the school district pool and did not provide adequate lifeguard protection).

[¶ 19] Starting with Mr. Weber's first two allegations, one of the statutes pertaining to the Hot Springs State Park, Wyo. Stat. Ann. § 36–8–304, specifically authorizes the State to lease park lands and provide hot spring water to the lessees:

The balance of the water and lands may be leased by the department, in consultation with the commission, for a term not less than five (5) years nor longer than ninety-nine (99) years. The length of the term of each individual lease shall be determined by the department, in consultation with the commission, in accordance with the value of the improvements proposed and actually placed upon the leasehold. The department may by rule provide for special use permits for limited purposes. The department may make rules and regulations with respect to the erection of buildings and improvements upon the individual leaseholds and may prescribe the plans and specifications of, and the materials to be used in the buildings to be erected. The department, in consultation with the commission, in any lease may provide for such

---

3. Although its argument is somewhat difficult to understand, the State also apparently argues that Mr. Weber did not adequately raise the issue that it was negligent in delivering mineral water to the Star Plunge because he did not frame his claim in terms of negligence in operating a public utility under Wyo. Stat. Ann. § 1–39–108. As our discussion makes clear, the State's activities fall within the operation or maintenance of a public park waiver of immunity; therefore, Mr. Weber did not need to assert that the State was operating a public utility.

plans and buildings and such use thereof as will best carry out the purposes of this chapter in retaining the lands and waters thereon for the treatment and cure of diseases and the pleasure of the general public. The department, in consultation with the commission, may conduct through pipes or otherwise any portion of the waters of the hot springs reserved for free use under this section and to provide baths and bathhouses for the use of the water at such rental or rates as it prescribes.

[¶ 20] On its face, the legislation envisioned that the operation of Hot Springs State Park would include leasing property to private persons who would provide facilities for the public to use the hot mineral water. The statute also contemplates the State would regulate those buildings and improvements, approve building plans, specify materials, and provide hot mineral water to the facilities. When § 36–8–304 is read in conjunction with § 1–39–106, it is obvious that the legislature intended to waive immunity for the State's alleged negligence in approving its lessee's (the Star Plunge's) design and construction of the Vapor Cave and in supplying the water.

[¶ 21] The clear direction of § 36–8–304 sets the present case apart from *Sawyer v. City of Sheridan*, 793 P.2d 476 (Wyo.1990), which the district court cited as authority for its holding that the State was immune from suit for claims of negligent design and construction of the Vapor Cave. In *Sawyer*, we ruled that the plaintiffs could not maintain suit against the City of Sheridan for damages caused by the failure of iron pipes in their mobile home park water system when they installed said pipes to comply with a Sheridan city ordinance. The Sawyers claimed that Wyo. Stat. Ann. § 1–39–108(a), which waives immunity for public employee negligence in the "operation of public utilities," applied in that case. We stated that "[t]he asserted wrongdoing on the part of the City of Sheridan does not spring from 'operation' of a public utility. The claim is clearly one which asserts that the Sheridan City Council was negligent in adopting an ordinance which proved over time to be unsatisfactory or perhaps even ill-considered." *Id.* at 478. We explained "the complaint is not that a

city employee committed an act of negligence in the operation of the water system; but, rather, that the Sheridan City Council should never have enacted an ordinance which included a requirement to use iron pipe. The claim simply does not fit in the niche provided by W.S. 1–39–108(a)." *Id.*

[¶ 22] In contrast, Mr. Weber asserts that individual state employees were negligent in approving the design and construction of the fountain in the Vapor Cave. That is much different than asserting that a city council was negligent in passing an ordinance with certain building material requirements. Moreover, this case involves property owned, managed, and leased by the State. *Sawyer* simply does not apply to the circumstances presented here. When read together, § 1–39–106 and § 36–8–304 clearly provide that overseeing building construction on leased property and delivery of hot mineral water to lessees are parts of the State's operation of Hot Springs State Park.

[¶ 23] With regard to Mr. Weber's claim that the State failed to properly oversee the Star Plunge concession and/or inspect and require correction of safety problems, the district court cited *Soles v. State*, 809 P.2d 772, 773 (Wyo.1991) as authority for its ruling that state inspections do not amount to "maintenance" of a "park." *Soles* considered whether the legislature waived immunity under the "maintenance" of "building" language in § 1–39–106 for regulatory inspections by independent state agencies. Here, we are addressing whether immunity is waived for the State's failure, as owner and lessor of state park property, to identify and require correction of safety issues existing on leased property in a state park.

[¶ 24] In addition to the typical regulatory inspections, the Concession and Revenue Manager for the State conducted annual inspections of the Star Plunge as part of the State's role as owner and lessor of Hot Springs State Park property. The lease between the Star Plunge and the State specifically required the Star Plunge to comply with the rules and regulations adopted by the agency that oversees state parks and the agency that oversees health regulations. The

role of the State in this case as owner and lessor of the land clearly distinguishes the *Soles* decision which was only concerned with standard regulatory inspections by independent state agencies. Under these circumstances, the State's operation and maintenance of Hot Springs State Park included overseeing and/or inspecting its lessee's property. Section 1–39–106 waives immunity for public employee negligence in this role.

[¶ 25]   Although we are ruling that the State is not immune under the circumstances presented here, we do not mean to suggest that the State will ultimately bear liability for Mr. Weber's injuries. The concepts of immunity and liability seem to have been conflated in this case. Immunity prevents the State from being sued in the first place. Even though the State is not immune, there may be other legal principles which insulate it from liability. Issues such as whether the State had a duty to provide for the safety of patrons on the leased property, whether the duty had been delegated to the lessee, whether any duty was breached, and/or whether any breach was the proximate cause of Mr. Weber's injuries will have to be addressed to determine whether the State is liable in this case. Those questions were not decided by the district court and are not fully joined at this time. The sole issue that has been fully presented to this Court is the question of whether the legislature waived immunity under the Wyoming Governmental Claims Act and we conclude it did.

[¶ 26]   Reversed and remanded.

GOLDEN, Justice, dissenting, in which HILL, Justice, joins.

[¶ 27]   I disagree with the majority's decision that the State has waived its immunity under the facts of this case. Were I writing the Court's opinion, I would reach the opposite conclusion in the following way.

[¶ 28]   The State of Wyoming leases certain land in Hot Springs State Park to C & W Enterprises, Inc., a Wyoming corporation doing business as The Star Plunge. (Hereinafter referred to as "Star Plunge.") Star Plunge provides a steam room known as the "Vapor Cave." Francis Weber sustained injuries while in the Vapor Cave.

[¶ 29]   Weber brought a negligence action against the State. Weber claimed Wyo. Stat. Ann. § 1–39–106 operated to waive governmental immunity because his action was premised on alleged "negligence of public employees while acting in the scope of their duties in the operation or maintenance of any building, recreation area or public park." The State moved for summary judgment on the grounds § 1–39–106 did not apply under the undisputed, material facts of the case and therefore the State had not waived immunity. The district court granted summary judgment to the State. I would affirm.

## ISSUES

[¶ 30]   Weber presents four issues:

1.   Whether there are facts, when viewed in the light most favorable to Appellant, that a jury could conclude the State of Wyoming's employees were negligent.

2.   Whether Wyoming Statute § 1–1–109 requires the apportionment of fault.[4]

3.   Whether there are facts, when viewed in the light most favorable to Appellant, that a jury could conclude the State's employees were operating and maintaining the Hot Springs State Park.

4.   Whether the State of Wyoming, as a landlord, may be held liable for injuries suffered by a patron of the Hot Springs State Park.

## FACTS

[¶ 31]   The State owns Hot Springs State Park and the geothermal mineral water therein. The State has leased certain lands within the Park to a limited number of concessionaires. The State supplies the geothermal water to all concessionaires. Before delivering the water, the State gathers the water into a heat exchange building where it removes any contaminants. The State then delivers the heated water to the property line of the concessionaire. The hot water delivered averages 127 degrees Fahrenheit. The State also delivers cooled water to the prop-

4.   I find it unnecessary to address this issue as   argued.

erty line. It is up to the concessionaire to mix the hot and cooled water to obtain the temperature desired for the concessionaire's particular purpose.

[¶ 32] In 1958, the State leased certain land within the Park to Star Plunge. The lease allows Star Plunge to erect structures on the property. It further requires Star Plunge to maintain the buildings and pay all property taxes. At the end of the lease, Star Plunge is required to remove all buildings it added to the property.

[¶ 33] Star Plunge operates a facility that, among other things, allows patrons to bathe in the hot mineral water. Patrons pay a fee for entrance to the Star Plunge facility. The president of Star Plunge testified at deposition that he added the Vapor Cave to the facility in 1976 after receiving oral approval from the State. He was responsible for the design and construction of the Vapor Cave. He installed a pipe from the State's main hot water line to the Vapor Cave and allows the water to enter the Vapor Cave at the same temperature the State delivers it. The water enters the middle of the Vapor Cave through a small fountain-like structure. The water then falls down into a surrounding drain.

[¶ 34] Weber entered the Vapor Cave and laid down on one of the benches. He does not remember anything after that. Circumstances would indicate he somehow fell off the bench. While unconscious on the floor a portion of Weber's body came into contact with the hot water, resulting in serious injury.

[¶ 35] Weber brought legal action against Star Plunge alleging the Vapor Cave was unsafe in many respects. Weber later added the State as a party. Weber alleged the State was negligent in its operation and maintenance of the Park by allowing Star Plunge to construct an unsafe steam room and by supplying hot water to the same unsafe steam room.

[¶ 36] After conducting discovery, the State moved for summary judgment. The State claimed that, according to the undisputed material facts, the State's involvement with Star Plunge was unrelated to the opera-

tion or maintenance of the Park. The district court agreed and granted summary judgment to the State.

## DISCUSSION

[¶ 37] Summary judgment is appropriate when no genuine issue as to any material fact exists and the prevailing party is entitled to have a judgment as a matter of law. W.R.C.P. 56(c). We evaluate the propriety of a summary judgment de novo by employing the same standards and by using the same materials as were used by the lower court. *Kirkwood v. CUNA Mut. Ins. Soc'y,* 937 P.2d 206, 208 (Wyo.1997). We examine the record from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record. *Davis v. Wyoming Med. Center, Inc.,* 934 P.2d 1246, 1250 (Wyo. 1997).

[¶ 38] Wyoming's Governmental Claims Act establishes governmental immunity unless an express statutory provision provides for liability. Wyo. Stat. Ann. § 1–39–104 (LexisNexis 2011). "The statute presents a close-ended waiver of governmental immunity; unless a claim asserted against a municipality falls within one of the statutory exceptions, it will be barred." *Abelseth v. City of Gillette,* 752 P.2d 430, 433 (Wyo.1988). *See also State, Dep't of Corr. v. Watts,* 2008 WY 19, ¶¶ 14–20, 177 P.3d 793, 797–98 (Wyo. 2008); *Veile v. Bd. of Cty. Comm'rs of Washakie Cty.,* 860 P.2d 1174, 1177 (Wyo.1993); *Soles v. State,* 809 P.2d 772, 773 (Wyo.1991) The statute relied upon by Weber is Wyo. Stat. Ann. § 1–39–106 (LexisNexis 2011), which opens a governmental entity to liability for damages "resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, recreation area or public park." As applies to the instant case, Weber does not claim that the State was negligent in operating or maintaining the Vapor Cave. Rather Weber claims the State was negligent in operating and maintaining the Park.

[¶ 39] This Court has previously defined the terms "operation" and "maintenance" as used in § 1–39–106. In *Watts*, we stated the "operation" aspect of § 1–39–106 "waives immunity for the State's negligence in making the building functional." *Watts*, ¶ 21, 177 P.3d at 799. In *Soles*, we stated "maintenance" means "the labor of keeping something (as buildings or equipment) in a state of repair or efficiency: care, upkeep" quoting Webster's Third New International Dictionary 1362 (1986). *Soles*, 809 P.2d at 773.

[¶ 40] With these definitions in mind, I address Weber's contentions. Weber contends that it was negligent for the State to allow Star Plunge to design and construct the Vapor Cave without what he deems to be adequate safety measures. He then contends it was negligent of the State to supply the hot geothermal water to Star Plunge knowing it would be used in the unsafe Vapor Cave. By focusing exclusively on the Vapor Cave, Weber skips several steps. The focal question is whether the very existence of the Vapor Cave, and more essentially Star Plunge, is required for the function and upkeep of the Park.

[¶ 41] The creation and governance of Hot Springs State Park is pursuant to Wyo. Stat. Ann. §§ 36–8–301 through 36–8–320. Of particular importance to the instant appeal is Wyo. Stat. Ann. § 36–8–304 (Lexis-Nexis 2011):

**Public baths and public campgrounds.**

The department of state parks and cultural resources shall retain one-fourth (1/4) of the water in the main or largest principal spring on the state land on the eastern bank of the Big Horn River with sufficient quantity of the land adjacent thereto, upon which suitable bathhouses may be constructed, which shall be open, with preference of use given free to persons who are indigent and suffering from ailments for which bathing in the waters of the Big Horn Hot Springs will afford relief. The department may make necessary rules and regulations governing free baths, the manner and time of bathing, and may require medical examination of applicants for baths. The bathhouse shall remain open not less than ten (10) hours a day each weekday and not less than six (6) hours on Sundays and holidays. The rules shall meet the minimum requirements of rules adopted by the department of agriculture governing public pools and spas. The department, in consultation with the commission, may set apart a suitable location and portion of the lands for public camping purposes but may contract for operation of any campgrounds by competitive sealed bid. Should the department, in consultation with the commission, operate any campground within Hot Springs State Park, the charges per night shall not be less than one-half (1/2) of the average charges imposed by private campground operators within a five (5) mile radius of the Hot Springs State Park. The balance of the water and lands may be leased by the department, in consultation with the commission, for a term not less than five (5) years nor longer than ninety-nine (99) years. The length of the term of each individual lease shall be determined by the department, in consultation with the commission, in accordance with the value of the improvements proposed and actually placed upon the leasehold. The department may by rule provide for special use permits for limited purposes. The department may make rules and regulations with respect to the erection of buildings and improvements upon the individual leaseholds and may prescribe the plans and specifications of, and the materials to be used in the buildings to be erected. The department, in consultation with the commission, in any lease may provide for such plans and buildings and such use thereof as will best carry out the purposes of this chapter in retaining the lands and waters thereon for the treatment and cure of diseases and the pleasure of the general public. The department, in consultation with the commission, may conduct through pipes or otherwise any portion of the waters of the hot springs reserved for free use under this section and to provide baths and bathhouses for the use of the water at such rental or rates as it prescribes.

In keeping with the statute, the State operates and maintains a public bath house in the Park.

[¶ 42] Importantly, the statute does not mandate the State lease land for concessionaires to open bath houses. The statute only provides that the State "may" lease land. Thus, while the statute establishes the general purpose of the Park to be the establishment of baths and bathhouses for the public to enjoy the healing properties of the mineral water, it does not mandate leasing property as a means of carrying out that objective.

[¶ 43] Under the statutory mandate, the existence of Star Plunge is not necessary to the operation the Park. The State can, and does, fulfill the purposes of the Park without any particular concessionaire. Because the lease to Star Plunge, and specifically the existence of the Vapor Cave, is not essential to the functionality of the Park, governmental immunity has not been waived on the ground that ensuring the safety of the Vapor Cave is part of the operation of the Park.[5]

[¶ 44] The remaining question is whether ensuring the safety of the Vapor Cave is part of the maintenance of the Park. In other words, is ensuring the safety of the Vapor Cave a necessary action to keeping the Park in a state of good repair? By his argument, Weber asks this Court to find that maintaining the Park includes maintaining facilities owned and operated by third parties on leased land within the Park. I would not extend the definition so far. The State's maintenance of the Park extends only to land within the direct control of the State. Maintenance of the Park does not include maintaining land leased to third parties.[6]

[¶ 45] Weber also attempts to impose liability on the State under landlord-tenant principles. He does not, however, point to any statutory provision in support of his argument that the State loses its immunity because it is the owner and lessor of the property on which Star Plunge sits. Pre-

sumably, then, Weber must be arguing that being a landlord falls within the category of operating the Park. I have already stated that leasing property is not required for the functioning of the Park. It is not an operational undertaking by the State.

## CONCLUSION

[¶ 46] The question is whether the State abrogated its immunity under the circumstances of this case. Weber argues governmental immunity is waived because the State was supposed to ensure the safety of the Vapor Cave as part of its operation and maintenance of the Park. In essence, Weber's argument that the State was negligent in the operation and maintenance of the Park by not ensuring the Vapor Cave was safe is an attempt to make the State the guarantor of people's safety wherever they might be within the confines of Park land. I refuse to extend the scope of the terms "operation" or "maintenance" to that degree. I find that ensuring the safety of the Vapor Cave was not part of the operation or maintenance of the Park.

---

5. Weber argues delivering water to Star Plunge is essential to the operation of the Park. It is not. It is essential only to the operation of Star Plunge. The distinction is critical given that Weber has not alleged the State was negligent in the operation of the Vapor Cave.

6. In any event, Weber seems to argue that immunity should be waived because the State did nothing to ensure the safety of the Vapor Cave

despite conducting annual inspections of the Star Plunge facility. This argument fails because this Court has decided that conducting inspections of a facility is not tantamount to maintaining a facility. "As contemplated by § 1–39–106, 'maintenance' does not include 'inspection.'" *Soles*, 809 P.2d at 774. Certainly, then, "maintenance" of the Park does not include inspection of a private facility on leased property.