# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 98

**APRIL TERM, A.D. 2015**

**July 31, 2015**

JACOB FUGLE,

Appellant
(Plaintiff),

v.

SUBLETTE COUNTY SCHOOL DISTRICT #9
and STEPHEN NELSON,

Appellees
(Defendants).

S-14-0305

*Appeal from the District Court of Sublette County*
*The Honorable Marvin L. Tyler, Judge*

*Representing Appellant:*
*Travis J. Bing and Elizabeth Greenwood, Greenwood Law, LLC, Pinedale, Wyoming; Frank R. Chapman, Chapman Valdez & Lansing Attorneys and Counselors at Law, Casper, Wyoming; Inga L. Parsons, Attorney at Law, Marblehead, Massachusetts. Argument by Ms. Parsons.*

*Representing Appellees:*
*Tracy J. Copenhaver, Copenhaver, Kath, Kitchen & Kolpitcke, LLC, Powell, Wyoming.*

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

**NOTICE:** **This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Chief Justice.**

[¶1]     Appellant, Jacob Fugle, brought suit against Appellees, Sublette County School District #9 and his teacher, Stephen Nelson, for injuries he sustained during a science demonstration conducted in the school gymnasium.  Appellees sought summary judgment claiming immunity under the Wyoming Governmental Claims Act (Wyo. Stat. Ann. § 1-39-101 *et seq.*).  The district court granted the motion, and Mr. Fugle challenges that decision in this appeal.  We affirm.

## *ISSUES*

[¶2]     Mr. Fugle presents the following two issues:

> 1.  Whether the alleged negligence of Appellees falls within the waiver of immunity from liability for negligent operation or maintenance of a building under Wyo. Stat. Ann. § 1-39-106.
>
> 2.  Whether the alleged negligence of Appellees falls within the waiver of immunity from liability for negligent operation or maintenance of a recreation area under Wyo. Stat. Ann. § 1-39-106.

## *FACTS*

[¶3]     In November 2010, Mr. Fugle was a student at Big Piney High School in Big Piney, Wyoming.  As part of a science class, his teacher, Stephen Nelson, conducted a demonstration of centripetal force in the high school gymnasium using a wheeled cart and a 20-foot rope.  In the demonstration, Mr. Nelson stood in the center of the gym and held on to one end of the rope while a student, sitting in the cart, held on to the other end. The students took turns sitting in the cart and pushing on the cart to initiate motion. During Mr. Fugle's turn, he was unable to hang onto the rope due to the forces acting upon him, and when he let go of the rope, the cart travelled across the gym floor and into a door frame.  Mr. Fugle experienced extensive injuries, including a dislocated hip and a fractured femur, as a result of the collision.

[¶4]     Mr. Fugle filed suit against the School District and Mr. Nelson.  Following discovery, Appellees moved for summary judgment under the Wyoming Governmental Claims Act.    The district court granted Appellees' motion after concluding that Mr. Fugle's injury did not fall within the exceptions to governmental immunity for negligence in the "operation and maintenance" of any building, or in the "operation and maintenance" of any recreation area.  Mr. Fugle appealed.

## STANDARD OF REVIEW

[¶5]   We apply the following standard of review to a district court's summary judgment decision:

> Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c); *Metz Beverage Co. v. Wyoming Beverages, Inc.*, 2002 WY 21, ¶ 9, 39 P.3d 1051, 1055 (Wyo. 2002).  "A genuine issue of material fact exists when a disputed fact, if it were proven, would establish or refute an essential element of a cause of action or a defense that the parties have asserted."  *Id.*  Because summary judgment involves a purely legal determination, we undertake *de novo* review of a trial court's summary judgment decision.  *Glenn v. Union Pacific R.R. Co.*, 2008 WY 16, ¶ 6, 176 P.3d 640, 642 (Wyo. 2008).

*Singer v. Lajaunie*, 2014 WY 159, ¶ 19, 339 P.3d 277, 283 (Wyo. 2014) (quoting *Jacobs Ranch Coal Co. v. Thunder Basin Coal Co., LLC*, 2008 WY 101, ¶ 8, 191 P.3d 125, 128-29 (Wyo. 2008)).  We consider the record from a viewpoint most favorable to the party opposing summary judgment, giving to him all favorable inferences that can be drawn reasonably from the facts set forth in the affidavits, depositions, and other material properly appearing in the record.  *Singer*, ¶ 19, 339 P.3d at 283.

## DISCUSSION

[¶6]   The Wyoming Governmental Claims Act "provides broad governmental immunity from tort liability."  *Sinclair v. City of Gillette*, 2012 WY 19, ¶ 10, 270 P.3d 644, 646 (Wyo. 2012) (quoting *Krenning v. Heart Mt. Irrigation Dist.*, 2009 WY 11, ¶ 21, 200 P.3d 774, 781 (Wyo. 2009)).  Certain enumerated activities, however, are excepted from the general immunity rule.  Wyo. Stat. Ann. §§ 1-39-105 through -112 (LexisNexis 2015).  Under Wyo. Stat. Ann. § 1-39-106, "A governmental entity is liable for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, recreation area or public park."

[¶7]   Mr. Fugle contends that the School District's negligence resulted from the "operation or maintenance" of a building under Wyo. Stat. Ann. § 1-39-106.  He also claims that the School District's negligence resulted from the "operation or maintenance" of a recreation area under Wyo. Stat. Ann. § 1-39-106.  He contends that under the

2

statute, immunity has been waived for activities that are negligently conducted or supervised in the building or recreation area. Appellees concede that the School District is a governmental entity and that Mr. Nelson was a public employee acting within the scope of his duties. For purposes of the summary judgment motion, Appellees also concede that the science experiment was negligently conducted and Mr. Fugle was injured as a result of that negligence. They assert, however, that under Wyo. Stat. Ann. § 1-39-106, immunity from liability is waived only for activities related to the "operation or maintenance" of the facilities comprising the building or recreation area. They contend that Mr. Fugle's claims of negligence do not relate to any defect in the "operation or maintenance" of the gymnasium and, accordingly, do not fall within the waiver of governmental immunity under the statute.

[¶8]    In order to resolve this case, we must interpret Section 106 of the Wyoming Governmental Claims Act. In interpreting the WGCA, we apply the following rules of statutory interpretation:

> When we interpret statutes, our goal is to give effect to the intent of the legislature, and we "attempt to determine the legislature's intent based primarily on the plain and ordinary meaning of the words used in the statute." *Krenning v. Heart Mountain Irrigation Dist.*, 2009 WY 11, ¶ 9, 200 P.3d 774, 778 (Wyo. 2009). Statutory interpretation presents a question of law, so our review of the district court's conclusions is *de novo*. *Id.*; *Sinclair Oil Corp. v. Wyo. Dep't of Revenue*, 2010 WY 122, ¶ 7, 238 P.3d 568, 570 (Wyo. 2010).

> With specific regard to the Wyoming Governmental Claims Act, we have said that we should not "enlarge, stretch, expand[,] or extend" the statutory language to include "matters not falling within its express provisions." *State v. Watts*, 2008 WY 19, ¶ 19, 177 P.3d 793, 798 (Wyo. 2008). Instead, we use our "standard rules" of statutory interpretation "to determine whether the legislature intended that immunity be waived for a particular claim and will not resort to reliance upon previous unsupported and unnecessary suggestions that the act is to be interpreted either liberally or strictly." *Id.*, ¶ 20, 177 P.3d at 798-99.

*Stroth v. North Lincoln County Hosp. Dist.*, 2014 WY 81, ¶ 7, 327 P.3d 121, 125 (Wyo.

2014) (quoting *Sinclair*, ¶¶ 8-9, 270 P.3d at 646).

**Operation or Maintenance of a Building**

[¶9]    We will address, first, Mr. Fugle's claim that Appellees' negligence falls within the exception to immunity from liability for the operation or maintenance of a "building" under Wyo. Stat. Ann. § 1-39-106.  We have previously determined that this exception is limited to the State's negligence in making a building functional and, accordingly, applies only to unsafe conditions due to physical defects in the building itself.  In *State Dep't of Corr. v. Watts*, 2008 WY 19, 177 P.3d 793 (Wyo. 2008), the plaintiff filed a wrongful death suit against the State after his wife, a nurse employed at the Wyoming Honor Farm, was killed by an inmate at the Honor Farm.  He claimed, *inter alia*, that the Honor Farm had been negligent in failing to install security cameras in the area in which his wife was killed.  *Id.*, ¶ 40, 177 P.3d at 803.  The State moved for summary judgment, claiming that it was immune from suit under Wyo. Stat. Ann. § 1-39-106.  The district court denied the motion, and the State appealed.

[¶10]  On appeal, the plaintiff contended that "operation or maintenance" of a building should be read broadly to encompass the operation of the physical building as well as the operation of the penal institution within the building.  *Id.*, ¶ 22, 177 P.3d at 799.  This Court disagreed.  We noted, initially, that "operation" had been defined as the "state of being operative or functional" or "the process of operating or mode of action."  *Id.*, ¶ 21, 177 P.3d at 799 (quoting *City of Torrington v. Cottier*, 2006 WY 145, ¶ 8, 145 P.3d 1274, 1278 (Wyo. 2006)).  We then determined that Section 106, when read in harmony with the other provisions of the WGCA waiving governmental immunity for operation of specific types of institutions, indicated that the legislature intended the waiver of immunity to extend only to the function of the building itself:

> We construe a statutory provision to harmonize it with other provisions relating to the same subject matter.  Some of the other statutes waiving governmental immunity pertain to the operation of specific types of institutions.  For example, § 1-39-109 waives immunity for the "negligence of public employees while acting within the scope of their duties in the operation of any public hospital[.]"  If we were to accept Mr. Watts' broad interpretation of the waiver of immunity for operation of public buildings, there would be no need to specifically waive immunity for the operation of hospitals because such negligence would already be subsumed in the statute waiving immunity for operation of hospital buildings.  Thus, the context of § 1-39-106 within the WGCA indicates that the legislature intended the waiver to extend only to the function of the building itself rather than the entity operated

4

within the building. If the legislature had meant to waive immunity for operation of a penal institution, it could have done so expressly. *See, e.g.*, Colo. Rev. Stat. Ann. § 24-10-106(1)(b) (LexisNexis 2007) (specifying governmental liability for negligence in operation of correctional facilities and jails). In accordance with our rules of statutory interpretation, we will not expand the waiver of immunity to include matters not expressly stated by the legislature.

*Watts*, ¶ 23, 177 P.3d at 799. After discussing judicial precedent from other jurisdictions interpreting statutes similar to § 1-39-106, we determined that

the clear and unambiguous language of § 1-39-106, within the context of the rest of the WGCA, indicates that the legislature intended to limit the waiver of immunity to negligence associated with the function of the building structure and did not intend to extend the waiver to negligence associated with operation of the penal institution within the building. The operation and maintenance responsibility includes fixtures attached to the building.

*Id.*, ¶ 38, 177 P.3d at 802. Ultimately, we concluded that the plaintiff's negligence claims did not pertain to maintenance or operation of the physical structure of the building and therefore did not fall within the waiver of immunity set forth in Section 106.

[¶11] In the present case, Mr. Fugle's complaint alleged that the School District and Mr. Nelson "owed duties to Plaintiff, failed to perform those duties, and the failure to perform the duties proximately caused damages to Plaintiff." His complaint extended to any unknown employees of the School District who were "involved with conducting, supervising, overseeing, or otherwise participating or facilitating the science demonstration that occurred on or about November 23, 2010." In his opposition to Appellees' motion for summary judgment, however, Mr. Fugle claimed that his injury "was a result of his impact with the unpadded gym door jamb which is part of the school building and which was operated without safety procedures." According to Mr. Fugle, "the gym building itself was being operated as part of that experiment and the result from that negligent operation and maintenance resulted in Mr. Fugle's injuries."

[¶12] In order to fit his claim within the waiver of governmental immunity set forth in Wyo. Stat. Ann. § 1-39-106, Mr. Fugle alleges a potential defect in the gymnasium due to the failure to provide adequate padding for the science demonstration. His assertions, however, ultimately relate to the design and supervision of the experiment, and not to a defect in the gymnasium. In other words, according to Mr. Fugle's theory, the gymnasium became "defective" only as a result of the design and supervision of the

science demonstration. In support of his theory, Mr. Fugle submitted two reports to the district court authored by persons designated by Mr. Fugle as expert witnesses. In the first report, submitted by an engineer, the author opined that Mr. Fugle's injuries occurred as a result of Mr. Nelson's failure to require students to wear safety gear, defects in the design of the experiment, and the lack of adequate safety procedures. Similarly, in the second report, submitted by a physics teacher, the author concluded that Mr. Fugle's injuries occurred as a result of design flaws in the experiment:

> The experiment conceived by Mr. Nelson does provide students the opportunity to experience centripetal forces, which research shows helps students learn. The problems are the central concept seems to be misrepresented and the design of the experiment itself has serious flaws including: 1. length of the rope, 2. lack of control of student speed, 3. presence of a whiplash effect, 4. small diameter rope, and 5. poor student instructions.

Neither report mentions any defect inherent in the school building or the gymnasium.

[¶13] Mr. Fugle's assertion is analogous to the claim in *Watts*, in which the plaintiff alleged negligence due, in part, to the lack of security cameras in the area in which his wife was killed. In *Watts*, ¶ 40, 177 P.3d at 803, the plaintiff produced testimony suggesting that, "if there had been security cameras to monitor the entrance to the medical offices, it is unlikely Floyd Grady could have prevented detection of his presence and Tammy Watts would not have been killed." Notwithstanding this evidence, we concluded that the plaintiff's "claims of insufficient surveillance or the lack of security cameras do not fall within the waiver." *Id.* Implicit in our conclusion was the determination that security cameras, which were not mandated by building codes or other laws, were not necessary to the function of the building structure. Similarly, in the present case, Mr. Fugle failed to present any evidence indicating that the gymnasium was inherently defective due to a lack of padding around the doors, or that such padding was required in order to make the gymnasium functional. Accordingly, because Mr. Fugle presented no evidence of a physical defect in the gymnasium, we are unable to conclude that his claims fall within the waiver of governmental immunity for operation or maintenance of a building under Wyo. Stat. Ann. § 1-39-106.

**Operation or Maintenance of a Recreation Area**

[¶14] Mr. Fugle also claims that Appellees' negligence falls within the exception to immunity from liability for the operation or maintenance of a "recreation area" under Wyo. Stat. Ann. § 1-39-106. He claims that this waiver is broader than the waiver of immunity for the operation or maintenance of a building because it extends to all activities conducted within the recreation area. Mr. Fugle relies on our decision in *Weber*

*v. State*, 2011 WY 127, 261 P.3d 225 (Wyo. 2011).

[¶15]  In *Weber*, the plaintiff filed a personal injury action against the State after he was burned by hot mineral water in the steam room at the Star Plunge in Hot Springs State Park.  According to the plaintiff, the State had been negligent in (1) delivering water to the Star Plunge; (2) approving the design and construction of the steam room; and (3) failing to oversee the property and/or inspect for safety concerns.  *Id.*, ¶ 18, 261 P.3d at 230.  The State moved for summary judgment, asserting that the plaintiff's claims did not fall within the waiver of governmental immunity for the operation or maintenance of a public park under Wyo. Stat. Ann. § 1-39-106.  Relying on our decision in *Watts*, the district court granted the State's motion.  On appeal, we distinguished the waiver of immunity for the operation or maintenance of a building, at issue in *Watts*, from the waiver for operation or maintenance of a public park:

> The district court relied on our decision in *Watts* to rule that the legislature did not waive immunity in § 1-39-106 for "business operations of concessionaires in [s]tate [p]arks." *Watts* involved a suit against the State after a nurse employed at the Wyoming Honor Farm was killed by an inmate.  *Watts*, ¶¶ 3-4, 177 P.3d at 794.  We interpreted the portion of § 1-39-106 that waives immunity for operation or maintenance of a "building" and stated that the waiver is limited to the State's negligence in making the building functional and, accordingly, applies only to unsafe conditions due to physical defects in the building.  *Id.* at ¶¶ 21, 36, 177 P.3d at 799, 802.  We distinguished the waiver of immunity for operation of a discrete "building" in § 1-39-106 from waivers of immunity for certain types of facilities, such as "hospitals" in § 1-39-109.  We indicated that when the legislature grants immunity for facilities with a specific purpose, the waiver includes the activities undertaken within such facilities.  Specific to the facts of *Watts*, the legislature did not waive immunity for operation of a penal institution, so the waiver only pertained to the physical attributes of the building, not the activities conducted therein.  *Id.* at ¶ 23, 177 P.3d at 799.

> The present case involves the statutory language waiving immunity for operation of a "park," not a "building." The plain meaning of "park" is "a public area of land . . . having **facilities for recreation**," *Webster's College Dictionary* 984 (1991), and "a piece of open land . . . **with public amenities.**"  www.dictionary.com (emphasis added). As is clear from the standard definition of park, the word

7

means more than the land itself; it includes whatever "amenities" and "facilities for recreation" the owner of the park chooses to incorporate. The rationale we used to limit the waiver of immunity for operation of a building in *Watts* does not apply to the waiver for operation of a park because, unlike operation of a building, operation of a park involves many different activities and amenities. As with the waiver of immunity for operation of a hospital referenced in *Watts*, the waiver of immunity for parks includes the activities undertaken by the State within the park facilities.

This Court has employed similar reasoning in interpreting the waiver of immunity for operation of a "recreation area" in § 1-39-106. In *Newberry* [*v. Board of County Comm'rs of Fremont County*], 919 P.2d [141,] 146 [(Wyo. 1996)], we recognized that maintenance of a trestle on a trail fell within the waiver for a "recreation area," although we ultimately held the State was immune because Wyo. Stat. Ann. § 1-39-120 provided specific immunity for maintenance of a bridge within a recreation area. In *DiVenere v. University of Wyoming*, 811 P.2d 273, 274 (Wyo. 1991), Ms. DiVenere was injured when she fell on ice on a concourse leading to the upper deck at the University of Wyoming's football stadium. Giving the statutory language its standard meaning, we held that the stadium was a recreation area and the ramps or concourses were part of that recreation area. *Id.* at 275-76. Thus, this Court's interpretation of "recreation area" included the facilities and amenities within the "recreation area."

*Weber*, ¶¶ 15-17, 261 P.3d at 229-30. Ultimately, we held that the waiver of governmental immunity for operation or maintenance of a public park under Wyo. Stat. Ann. § 1-39-106 applied to the plaintiff's claims that the State had been negligent in approving the design and construction of the steam room and in failing to properly oversee the property and/or inspect for safety concerns. *Id.*, ¶¶ 22-24, 261 P.3d at 231-32.

[¶16] According to Mr. Fugle, our decision in *Weber* indicates that the waiver of immunity from liability for negligence in the operation or maintenance of a recreation area applies to negligence relating to any activities undertaken within the recreation area. We do not agree. Mr. Fugle relies heavily on the statement, from *Weber*, that "the waiver of immunity for parks includes the activities undertaken by the State within the park facilities." The specific "activities" at issue in *Weber*, however, related to operation or

8

maintenance of the physical facilities in the park. We began our analysis in that case by noting that the "standard definition of [a] park . . . includes whatever 'amenities' and 'facilities for recreation' the owner of the park chooses to incorporate." *Id.*, ¶ 16, 261 P.3d at 230. We noted that, under Wyo. Stat. Ann. § 36-8-304, the State acted under specific statutory authorization to lease park lands and provide water to its lessees. Based on that statutory authorization, we concluded the legislature intended to waive immunity for negligence in approving the design and construction of the steam room and in delivering water to the steam room:

> On its face, the legislation envisioned that the operation of Hot Springs State Park would include leasing property to private persons who would provide facilities for the public to use the hot mineral water. The statute also contemplates the State would regulate those buildings and improvements, approve building plans, specify materials, and provide hot mineral water to the facilities. When § 36-8-304 is read in conjunction with § 1-39-106, it is obvious that the legislature intended to waive immunity for the State's alleged negligence in approving its lessee's (the Star Plunge's) design and construction of the [steam room] and in supplying the water.

*Weber*, ¶ 20, 261 P.3d at 231. We also found that our reasoning was consistent with the application of Wyo. Stat. Ann. § 1-39-106 in cases involving recreation areas. Indeed, in both of the cases cited in *Weber* involving operation of a recreation area, the alleged negligence related to operation of the physical attributes of the recreation area, and not the activities conducted within the recreation area. In *DiVenere*, 811 P.2d at 274, the plaintiffs alleged that the State was negligent in failing to keep a walkway in the University of Wyoming's football stadium free of ice. In *Newberry*, 919 P.2d at 143-44, the plaintiff alleged the State was negligent in failing to maintain a trestle on a public trail.

[¶17] Assuming, without deciding, that a high school gymnasium is a recreation area, we cannot conclude that conducting and supervising a science demonstration constitutes operation or maintenance of a recreation area simply because the activity takes place there. Mr. Fugle suggests that the State's immunity from liability depends on the location of the demonstration. According to his interpretation of the Governmental Claims Act, Appellees would have preserved their immunity from liability if the demonstration had been conducted in a classroom. We do not think the legislature intended such a result. In this case, unlike in *Weber*, the alleged negligence does not relate to any defect in the design or construction of a physical structure or facility. Ultimately, we find no reason to conclude that the legislature intended for the waiver of immunity from liability in the operation or maintenance of a recreation area to apply to all activities undertaken within a

9

particular recreation area.  Rather, we conclude that the legislature intended to limit the waiver of immunity to negligence associated with the function of the physical attributes or structure of the recreation area.

[¶18]  Consequently, for purposes of our analysis in the present case, the "recreation area" at issue is not distinguishable from the "building" under Wyo. Stat. Ann. § 1-39-106.  As a result, the waiver of immunity from liability for operation or maintenance of the recreation area in this case is co-extensive with the waiver for operation or maintenance of the building.  Accordingly, for the reasons set forth above, we conclude that Mr. Fugle's claim does not fall within the waiver of governmental immunity set forth at Wyo. Stat. Ann. § 1-39-106.

[¶19]  As a final matter, we note that during oral argument, counsel for Mr. Fugle commented extensively on the inherent unfairness and harshness of the Governmental Claims Act as applied in this case.  Mr. Fugle contends that students who are negligently injured by the actions or inactions of school employees acting within the scope of their responsibilities should have a legal remedy. He argues that there is no legitimate justification for permitting the School District to be shielded from liability for injuries sustained by students under its care.  That appeal, however, is appropriately addressed to the legislature or, perhaps, to the School District.

[¶20]  We have previously explained that the doctrine of sovereign immunity "has its roots in the ancient common law of England which held 'The King can do no wrong' and hence could not be sued in any court of law." *Worthington v. State*, 598 P.2d 796, 803 (Wyo. 1979) (footnote omitted).  Since 1979, however, the doctrine has been controlled by statute and, in recognition of the unfairness in preventing certain plaintiffs from obtaining a remedy, our legislature has set forth exceptions to the doctrine:

> In reality, of course, the King does "do wrong," but the right to seek redress for such wrong is determined by the policy and will of the legislative body. . . .
>
> In 1979, the Wyoming Legislature abrogated the common law of sovereign immunity in Wyoming, and established sovereign immunity as a legislative construct. *See* Wyo. Stat. Ann. §§ 1-39-101 to 1-39-121 (LexisNexis 2013). . . . The Wyoming Legislature's purpose in enacting the WGCA is clear.  The legislature sought to retain the common law principle that a governmental entity is generally immune from lawsuits, while acknowledging that fairness requires authorizing lawsuits against a governmental entity in certain statutorily defined situations.  The legislature therefore created specific statutory exceptions to the general rule of

sovereign immunity.

*Campbell County Mem. Hosp. v. Pfeifle*, 2014 WY 3, ¶¶ 18-19, 317 P.3d 573, 578 (Wyo. 2014). We have endeavored to interpret the statutory language pertaining to one of the exceptions created by the legislature and have found that the exception set forth in Wyo. Stat. Ann. § 1-39-106 does not apply and does not provide a remedy for Mr. Fugle.[1]

[¶21] We would also note that the legislature has provided governmental entities the option to secure liability insurance and, in such a case, immunity is waived to the extent of that insurance. Wyo. Stat. Ann. §§ 21-3-129; 1-39-118(b)(i).[2] It is undisputed, however, that the School District did not obtain insurance coverage that would extend its liability beyond the provisions of the Governmental Claims Act. In the final analysis, Mr. Fugle's plea for a remedy is best made to the legislature for expansion of the

---

[1] The legislative exceptions to immunity include liability for the negligent operation of: motor vehicles, aircraft, and watercraft (Wyo. Stat. Ann. § 1-39-105); airports (Wyo. Stat. Ann. § 1-39-107); public utilities (Wyo. Stat. Ann. § 1-39-108); and medical facilities (Wyo. Stat. Ann. § 1-39-109). Governmental immunity has also been waived for damages caused by the negligence of government health care providers (Wyo. Stat. Ann. § 1-39-110) and peace officers (Wyo. Stat. Ann. § 1-39-112).

[2] Wyo. Stat. Ann. § 21-3-129 provides:

> **Comprehensive liability insurance; waiver of governmental immunity.**
>
> (a) The board of trustees of each school district within the state may procure a policy or policies of comprehensive liability insurance as provided in W.S. 1-39-118(b), self-insure as provided in W.S. 1-39-118(c)(i) or join with other school districts as provided in W.S. 1-39-118(c)(ii).

Wyo. Stat. Ann. § 1-39-118(b)(i) provides:

> **Maximum liability; insurance authorized.**
>
> . . .
>
> (b) A governmental entity is authorized to purchase liability insurance coverage covering any acts or risks including all or any portion of the risks provided under this act. Purchase of liability insurance coverage shall extend the governmental entity's liability as follows:
>
> > (i) If a governmental entity has insurance coverage either exceeding the limits of liability as stated in this section or covering liability which is not authorized by this act, the governmental entity's liability is extended to the coverage.

exceptions or to the local governmental entity for coverage.  We are constrained by the language of the statute.

[¶22]  Affirmed.