# IN THE SUPREME COURT, STATE OF WYOMING

## 2021 WY 47

### OCTOBER TERM, A.D. 2020

### March 25, 2021

WYOMING STATE HOSPITAL and
STATE OF WYOMING,

Petitioners,

v.

MARY ROMINE and DONALD
ROMINE, as Guardians and Conservators
for and on behalf of Justina Case, their
ward,

Respondents.

S-20-0079, S-20-0092

*Original Proceeding*
*Petition for Writ of Review*
*District Court of Laramie County*
*The Honorable Steven K. Sharpe, Judge*

*Representing Appellant:*
　　Bridget Hill, Wyoming Attorney General; Ewa Dawson, Senior Assistant Attorney General; Adrian Kowalski, Assistant Attorney General. Argument by Mr. Kowalski.

*Representing Appellee:*
　　James E. Fitzgerald and Michael J. Fitzgerald, The Fitzgerald Law Firm, Cheyenne, Wyoming. Argument by Mr. Michael J. Fitzgerald.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

*KAUTZ, J., delivers the opinion of the Court; DAVIS, C.J., files a specially concurring opinion, in which FOX, J., joins.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]    Justina Case was sexually assaulted by a certified nursing assistant (CNA) while a patient at the Wyoming State Hospital (Hospital).  Her parents, Donald and Mary Romine, sued the Hospital[1] asserting various claims of negligence under the Wyoming Governmental Claims Act, Wyo. Stat. Ann. §§ 1-39-101 – 120 (LexisNexis 2019) (Claims Act).  The district court denied the Hospital's motion for summary judgment, concluding (1) the Hospital had waived its immunity under § 1-39-110; and (2) genuine disputes of material fact existed as to (a) whether the Romines' claims constitute "a single transaction or occurrence" under § 1-39-118 and (b) whether the Hospital's employees proximately caused Ms. Case's injuries.  The Hospital challenges these rulings.  We affirm in part, and dismiss in part.  In doing so, we clarify that an order denying summary judgment on a claim of governmental immunity is appealable only if it involves the purely legal issue of whether the State is immune from suit under the Claims Act.

## ISSUES

[¶2]    The dispositive issues are:

        1.      Does this Court have jurisdiction to review the district court's § 1-39-118 and proximate cause decisions?

        2. Does § 1-39-110's waiver of governmental immunity apply only to medical malpractice claims?

## FACTS

[¶3]    Because this appeal involves solely legal issues, we provide only a brief background of the facts for context.

[¶4]    On June 2, 2016, Justina Case was involuntarily committed to the Wyoming State Hospital.  The Hospital placed her on "Silent Constant Observation," which meant a staff member was to monitor her movements at all times, even when toileting and showering, but was prohibited from engaging in social conversation with her.  Starting in July 2016, CNA Christopher King was routinely assigned as Ms. Case's silent constant observer.  While acting in this role, Mr. King allegedly sexually assaulted Ms. Case on numerous occasions.  According to Ms. Case, the abuse included oral and vaginal sex and occurred while Ms. Case was showering or in a room not monitored by security cameras.  Ms. Case reported the abuse to hospital staff on November 11, 2016.  The Hospital placed Mr. King on administrative leave and contacted law enforcement.  Mr. King eventually pled no

---

[1] The Romines also named the State of Wyoming as a defendant.  For the sake of simplicity, we refer only to the Hospital.

1

contest to two counts of second-degree sexual assault in violation of Wyo. Stat. Ann. § 6-2-303(a)(vi) (LexisNexis 2019).

[¶5]    The Romines, as Ms. Case's court-appointed conservators and guardians, filed a complaint against the Hospital under §§ 1-39-109 and 1-39-110 of the Claims Act. The parties filed cross-motions for summary judgment. Relevant here, the Hospital argued all of the Romines' claims sounded in ordinary negligence. As a result, it contended the claims could not be brought under § 1-39-110 because that statute waived the State's immunity only for medical malpractice claims. While the Hospital did not dispute that the Romines also stated claims under § 1-39-109, it argued damages with respect to those claims were capped at $250,000 under § 1-39-118 because there was only one proximate cause of Ms. Case's injuries—the alleged negligent operation of the hospital. The district court denied the Hospital's motion. It concluded the Hospital had waived its immunity under § 1-39-110 with respect to the negligence of its nurses.[2] It also decided genuine disputes of material fact existed as to whether single or multiple occurrences of negligence took place under § 1-39-118 and whether the Hospital's employees proximately caused Ms. Case's injuries.

[¶6]    The Hospital filed a notice of appeal or, in the alternative, a petition for writ of review under Rule 13 of the Wyoming Rules of Appellate Procedure (W.R.A.P.). It requested our consideration of two questions, which we quote verbatim:

> 1. Whether [§ 1-39-110's] waiver of immunity for negligence of health care providers requires proof of medical malpractice or simply ordinary negligence committed by an employee who happens to be a health care provider? [The State asserts that this is a *Watts* issue and therefore raises this issue through the notice of appeal as well].
>
> 2. Whether a claim for negligent hiring, training, retention, and supervision of a single employee can constitute multiple occurrences under [§ 1-39-118] of [the] Claims Act's limitation of maximum liability for "a single occurrence or transaction?" [The State acknowledges this may not be a *Watts* issue and therefore raise[s] this issue through the petition for the writ of review if it cannot be appealed as of right under *Watts*].

(Some Brackets in Original). We granted the writ with respect to the first issue, but not the second. Nevertheless, the Hospital raised the second issue in its appellate brief and

---

[2] The district court decided a CNA does not qualify as a "health care provider" under § 1-39-110. This issue is not before us.

2

included a third: "Does the Wyoming Governmental Claims Act waive immunity for negligence of public employees that does not serve as the proximate cause of any alleged injuries?"

## DISCUSSION

### A. Jurisdiction

[¶7]    The Hospital wants us to review the district court's § 1-39-118 and proximate cause decisions. Those decisions, however, were made by the district court in denying the Hospital's motion for summary judgment. The denial of a motion for summary judgment is generally not a final appealable order under W.R.A.P. 1.05. *State, Dep't of Corr. v. Watts*, 2008 WY 19, ¶ 9, 177 P.3d 793, 795 (Wyo. 2008) (citing *Gilstrap v. June Eisele Warren Trust*, 2005 WY 21, ¶ 7, 106 P.3d 858, 861 (Wyo. 2005), and *Wolter v. Equitable Res. Energy Co.*, 979 P.2d 948, 953 (Wyo. 1999)).

[¶8]    An exception to this general rule exists when a district court denies summary judgment on qualified immunity grounds. *Id*. (citing *Park Cnty. v. Cooney*, 845 P.2d 346, 349 (Wyo. 1992)). The reason for this exception is that "qualified immunity provides 'an *immunity from suit* rather than a mere defense to liability, and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.' . . . In other words, unless the order denying [summary judgment] can be reviewed before trial, it can never be effectively reviewed at all, because the defendant will have already suffered an irreparable loss to his immunity from suit." *Park Cnty.*, 845 P.2d at 349 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) (emphasis in original)).

[¶9]    In *Watts* we decided the same rationale favoring immediate review of denials of summary judgment on qualified immunity grounds applied to summary judgment denials based on governmental immunity. *Watts*, ¶ 10, 177 P.3d at 796. We held "an order denying a summary judgment *on a claim of governmental immunity* is appealable and it is not necessary to grant discretionary review in such circumstances." *Id.*, ¶ 10, 177 P.3d at 796 (emphasis added).

[¶10]   We did not explicitly describe in *Watts* when a denial of summary judgment based "on a claim of governmental immunity" is appealable. However, *Watts* involved the purely legal issue of whether Mr. Watts' claims fell within the "operation or maintenance of any building" exception to governmental immunity under § 1-39-106. *Id.*, ¶ 5, 177 P.3d at 795. We take the opportunity now to make explicit what was implicit in *Watts*—interlocutory review of a denial of summary judgment based "on a claim of governmental immunity" is limited to the purely legal issue of whether the State is immune from suit under the Claims Act. As we will explain, this limitation is consistent with our qualified immunity jurisprudence.

3

[¶11]   Under the Claims Act, "immunity is the rule and liability is the exception." *Vigil v. Ruettgers,* 887 P.2d 521, 524 (Wyo. 1994) (citing *Hurst v. State*, 698 P.2d 1130, 1132 (Wyo. 1985)).   Section 1-39-104(a) provides:   "A governmental entity and its public employees while acting within the scope of duties are *granted immunity from liability for any tort except as provided by W.S. 1-39-105 through 1-39-112.*" (emphasis added).   The clear language of the Claims Act establishes the legislature intended "immunity from liability" in § 1-39-104(a) to mean immunity from suit, not a defense to liability.

[¶12]   "When interpreting the [Claims Act], we apply the following rules of statutory interpretation:   Our goal is to give effect to the intent of the legislature, and we 'attempt to determine the legislature's intent based primarily on the plain and ordinary meaning of the words used in the statute.'"   *Craft v. State ex rel. Wyo. Dep't of Health*, 2020 WY 70, ¶ 26, 465 P.3d 395, 402 (Wyo. 2020) (quoting *Krenning v. Heart Mountain Irrigation Dist.*, 2009 WY 11, ¶ 9, 200 P.3d 774, 778 (Wyo. 2009)).   "Where legislative intent is discernible a court should give effect to the 'most likely, most reasonable, interpretation of the statute, given its design and purpose.'"   *Adekale v. State*, 2015 WY 30, ¶ 12, 344 P.3d 761, 765 (Wyo. 2015) (quoting *Rodriguez v. Casey*, 2002 WY 111, ¶ 20, 50 P.3d 323, 329 (Wyo. 2002)).

[¶13]   The Wyoming Legislature stated its intent in enacting the Claims Act in § 1-39-102. That provision states in relevant part:

> (a)     The Wyoming legislature recognizes the inherently unfair and inequitable results which occur in the *strict application of the doctrine of governmental immunity* and is cognizant of the Wyoming Supreme Court decision of *Oroz v. Board of County Commissioners*, 575 P.2d 1155 (1978). It is further recognized that the state and its political subdivisions as trustees of public revenues are constituted to serve the inhabitants of the state of Wyoming and furnish certain services not available through private parties and, in the case of the state, state revenues may only be expended upon legislative appropriation. This act is adopted by the legislature to balance the respective equities between persons injured by governmental actions and the taxpayers of the state of Wyoming whose revenues are utilized by governmental entities on behalf of those taxpayers. This act is intended to retain any common law defenses which a defendant may have by virtue of decisions from this or other jurisdictions.

Section 1-39-102(a) (emphasis added).

4

[¶14]  In *Campbell Cnty. Mem'l Hosp. v. Pfeifle*, 2014 WY 3, ¶ 19, 317 P.3d 573, 579 (Wyo. 2014), we found the intent of the Wyoming Legislature in passing the Claims Act to be "clear":  "The legislature sought to retain the *common law principle that a governmental entity is generally immune from lawsuits*, while acknowledging that fairness requires *authorizing lawsuits* against a governmental entity in certain statutorily defined situations." (Emphasis added).  *See also, Heimer v. Antelope Valley Improvement*, 2010 WY 29, ¶ 15, 226 P.3d 860, 863 (Wyo. 2010) ("*Although governmental entities are traditionally immune from suit under the doctrine of sovereign immunity*, the Wyoming legislature recognized 'the inherently unfair and inequitable results which occur in the strict application of governmental immunity' and enacted the Wyoming Governmental Claims Act . . . ." (emphasis added)); *Bd. of Cnty. Comm'rs of Teton Cnty. ex rel. Teton Cnty. Sheriff's Dep't v. Bassett*, 8 P.3d 1079, 1087 (Wyo. 2000) ("The Wyoming Governmental Claims Act . . . *retains sovereign immunity* except as specifically provided by statute." (emphasis added) (citing *Hurst*, 698 P.2d at 1132)).  In other words, the intent of the legislature in passing the Claims Act was to "create[] statutory exceptions to *sovereign immunity*." *Hoff v. City of Casper-Natrona Cnty. Health Dep't*, 2001 WY 97, ¶ 27, 33 P.3d 99, 105 (Wyo. 2001) (emphasis added).  Sovereign immunity is an immunity from suit. *See Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 766, 122 S. Ct. 1864, 1877, 152 L. Ed. 2d 962 (2002) ("Sovereign immunity does not merely constitute a defense to monetary liability or even to all types of liability.  Rather, it provides an immunity from suit."); *Ruppenthal v. State By & Through Econ. Dev. & Stabilization Bd.*, 849 P.2d 1316, 1320 (Wyo. 1993) (under the common law doctrine of sovereign immunity, a state is not subject to suit without its express consent) (citation omitted).

[¶15]  This interpretation of the Claims Act as retaining the State's *immunity from suit* except in certain limited situations is consistent with our Constitution.  Article 1, § 8 of the Wyoming Constitution provides in relevant part:  "Suits may be brought against the state in such manner and in such courts as the legislature may by law direct."  We have repeatedly held this provision "requires explicit legislative authorization *before a suit* can be maintained against the state." *Vigil,* 887 P.2d at 524 (emphasis added) (citations omitted).  *See also, Hjorth Royalty Co. v. Trs. of Univ. of Wyo.*, 30 Wyo. 309, 222 P. 9, 9 (1924) (Article 1, § 8 of the Wyoming Constitution is "not self-executing, *and no suit* can be maintained against the state until the Legislature has made provision therefor . . . ." (emphasis added)).

[¶16]  Because immunity under the Claims Act is an immunity from suit and not merely a defense to liability, it, like qualified immunity, "is effectively lost if [the] case is erroneously permitted to go to trial." *Mitchell*, 472 U.S. at 526, 105 S.Ct. at 2815.  Therefore, as we concluded in *Watts*, a denial of summary judgment based "on a claim of governmental immunity" is appealable without the need for a writ of review. *Watts*, ¶ 10, 177 P.3d at 796.

5

[¶17] Our review of a denial of summary judgment based on qualified immunity, however, is limited to the <u>purely legal issue</u> of "whether the facts alleged (by the plaintiff, or, in some cases, the defendant) support a claim of [a] violation of clearly established law.'" *Guy v. Wyoming Dep't of Corr. by & through Lampert*, 2019 WY 69, ¶ 23, 444 P.3d 652, 660 (Wyo. 2019), *cert. denied sub nom. Guy v. Lampert*, 140 S. Ct. 1295, 206 L.Ed.2d 375 (2020) (quoting *Mitchell*, 472 U.S. at 528 n.9, 105 S.Ct. at 2816 n.9). As we explained in *Lucero v. Mathews*, 901 P.2d 1115, 1118 (Wyo. 1995):

> Our standard of review [of a denial of summary judgment based on qualified immunity grounds] is only applicable to determining whether the law was clearly established and whether the defendant's conduct was proscribed by such clearly established law without reviewing the merits of the case. This concept of "separability" between the legal question of whether the law was clearly established and the merits of the action was discussed . . . by the United States Supreme Court in *Johnson v. Jones*[, 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995)]. There the United States Supreme Court held that a defendant entitled to invoke a qualified-immunity defense may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a genuine issue of fact for trial. *Johnson v. Jones*, 515 U.S. at [319-20], 115 S.Ct. at 2159 . . . . Pursuant to *Johnson v. Jones*, we will not review the record to determine whether genuine issues of material fact exist, as this has already been determined by the district court and such a determination does not constitute a final, appealable order.

The reason for not allowing appeals from the denial of summary judgment based on a district court's determinations of evidentiary sufficiency in qualified immunity cases is that such appeals do "not advance the goals of the qualified-immunity doctrine in a sufficiently weighty way to overcome the delay and expenditure of judicial resources that would accompany such appeals." *Ralston v. Cannon*, 884 F.3d 1060, 1067-68 (10th Cir. 2018) (citing *Johnson*, 515 U.S. at 315-17, 115 S.Ct. 2151). Rather, such appeals "serve only to delay the administration of justice." *Id.* at 1068.

[¶18] We believe a similar limitation should apply to our review of denials of summary judgment based on governmental immunity under the Claims Act. We hold interlocutory review of denials of summary judgment based on governmental immunity is limited to the <u>purely legal issue of whether the State is immune from suit under the Claims Act</u>. Under this rubric, we may review whether the legislature waived the State's sovereign immunity under the Claims Act, i.e., whether the plaintiff's claims fall within one of the statutory exceptions to sovereign immunity found in §§ 1-39-105 through 1-39-112.

[¶19] On the other hand, denials of summary judgment based on issues pertaining to the State's liability are not appealable. As we explained in *Weber v. State*, 2011 WY 127, ¶ 25, 261 P.3d 225, 232 (Wyo. 2011), immunity and liability are distinct concepts. "Immunity prevents the State from being sued in the first place." *Id.* Liability, on the other hand, only comes into play if the State is not immune and is often fact intensive. *Id.* As a result, allowing appeals from denials of summary judgment based on issues pertaining to the State's liability does not sufficiently advance the goals of sovereign immunity and acts only to delay the administration of justice. *Ralston*, 884 F.3d at 1067-68 (citing *Johnson*, 515 U.S. at 315-17, 115 S.Ct. 2151).

[¶20] The district court denied the Hospital's summary judgment motion because it decided there were genuine disputes of material fact as to whether the Romines' claims constitute "a single transaction or occurrence" under § 1-39-118(a)(i). Section § 1-39-118(a)(i) provides:

> (a) Except as provided in subsection (b) of this section, in any action under this act, the liability of the governmental entity, including a public employee while acting within the scope of his duties, shall not exceed:
>
> (i) The sum of two hundred fifty thousand dollars ($250,000.00) to any claimant for any number of claims arising out of a single transaction or occurrence[.]

Section 1-39-118 relates to the State's liability, not its immunity from suit. It caps the Hospital's liability only if the Hospital is found to have waived its immunity from suit. The issue is not appealable.

[¶21] Similarly, the district court found there was a question of fact as to whether the Hospital's employees proximately caused Ms. Case's injuries. Proximate cause does not address the Hospital's immunity from suit but rather whether the Hospital will ultimately be found liable. *See Weber*, ¶ 25, 261 P.3d at 232 ("Issues such as whether . . . . any breach [by the State] was the proximate cause of Mr. Weber's injuries will have to be addressed to determine whether the State is liable in this case."). This issue is also not appealable.

[¶22] Because it does not involve the purely legal issue of whether the Hospital is immune from suit under the Claims Act, we dismiss the Hospital's appeal with respect to § 1-39-118 and proximate cause for lack of jurisdiction.

### B. Wyo. Stat. Ann. § 1-39-110

[¶23] The Hospital argues the district court erred in concluding it had waived its immunity under § 1-39-110. This conclusion was also made by the district court in denying the Hospital's motion for summary judgment. But, unlike the denial of summary judgment based on § 1-39-118 and proximate cause, the district court's decision concerning § 1-39-110 pertains to the purely legal issue of whether the Hospital is immune from suit under the Claims Act. As a result, we have jurisdiction to review it and the writ of review was unnecessary.

[¶24] "We review a district court's summary judgment decision de novo." *Four B Properties, LLC v. Nature Conservancy*, 2020 WY 24, ¶ 74, 458 P.3d 832, 849 (Wyo. 2020) (citing *Questar Expl. & Prod. Co. v. Rocky Mountain Res., LLC*, 2017 WY 10, ¶ 26, 388 P.3d 523, 530 (Wyo. 2017)). "We also review de novo a district court's interpretation of a statute." *Black Diamond Energy of Del., Inc. v. Wyo. Oil & Gas Conservation Comm'n*, 2020 WY 45, ¶ 10, 460 P.3d 740, 744 (Wyo. 2020) (citations omitted).

[¶25] The Claims Act "'provides broad governmental immunity from tort liability.'" *Fugle v. Sublette Cnty. Sch. Dist. No. 9*, 2015 WY 98, ¶ 6, 353 P.3d 732, 734 (Wyo. 2015) (quoting *Sinclair v. City of Gillette*, 2012 WY 19, ¶ 10, 270 P.3d 644, 646 (Wyo. 2012)). "It is a closed-end tort claims act, meaning that it bars any claim against a governmental entity or its employees unless it falls within one of the statutory exceptions."[3] *Varela v. Goshen Cnty. Fairgrounds*, 2020 WY 124, ¶ 13, 472 P.3d 1047, 1052-53 (Wyo. 2020) (citing *Craft*, ¶ 27, 465 P.3d at 403, and *Watts*, ¶ 14, 177 P.3d at 797). Section 1-39-110 is one such statutory exception. It waives governmental immunity "for damages resulting from bodily injury, wrongful death or property damage caused by the *negligence of health care providers* who are employees of the governmental entity, including contract physicians, physician assistants, nurses, optometrists and dentists who are providing a service for state institutions or county jails, while acting within the scope of their duties." Section 1-39-110(a) (emphasis added).

[¶26] The Hospital argues the ordinary negligence claims made by the Romines do not fall within the scope of § 1-39-110 because the statute is limited to medical malpractice claims. It contends this is so because the statute refers to "health care providers" including "contract physicians, physician assistants, nurses, optometrists, and dentists." According to the Hospital, because these individuals provide medical treatment and can be sued for medical malpractice, the statute's scope must be limited to medical malpractice claims. The Hospital also points out that the term "health care provider" mirrors the language used in other statutes related to medical malpractice such as the Medical Review Panel Act. It argues this evinces a legislative intent to waive immunity under § 1-39-110 only as to medical malpractice claims. We disagree.

---

[3] There is no dispute the Hospital is a "governmental entity" under the Claims Act. *See* § 1-39-103(a)(i), (vi) (defining "governmental entity" as "the state" and "State" as "the state of Wyoming or any of its . . . institutions").

8

[¶27] The decision of whether to waive immunity for a governmental entity "belongs to the Wyoming Legislature, not this Court." *Campbell Cnty. Mem'l Hosp.*, ¶ 29, 317 P.3d at 580 (citing Wyo. Const. art. 1, § 8). As a result, "we use our 'standard rules' of statutory interpretation 'to determine whether the legislature intended that immunity be waived for a particular claim and will not resort to reliance upon previous unsupported and unnecessary suggestions that the act is to be interpreted either liberally or strictly.'" *Sinclair*, ¶ 9, 270 P.3d at 646 (quoting *Watts*, ¶ 20, 177 P.3d at 798-99). As we stated above, "we 'attempt to determine the legislature's intent based primarily on the plain and ordinary meaning of the words used in the statute.'" *Craft*, ¶ 26, 465 P.3d at 402 (quoting *Krenning*, ¶ 9, 200 P.3d at 778).

[¶28] Section 1-39-110 is clear and unambiguous. It waives immunity for the "negligence" of health care providers. While negligence may include medical malpractice, *see Garnett v. Coyle*, 2001 WY 94, ¶ 24, 33 P.3d 114, 121 (Wyo. 2001) (noting the elements of a medical malpractice claim largely track the elements of a negligence claim), nothing in the plain language of § 1-39-110 suggests the legislature intended to limit the statute to medical malpractice claims.

[¶29] The Hospital's reliance on the Medical Review Panel Act is not helpful. While the Act applies to "health care providers," it, unlike § 1-39-110, explicitly refers to "malpractice claims" as the claims subject to its provisions. Wyo. Stat. Ann. §§ 9-2-1515(a)(i), (ii), 9-2-1518(a) (LexisNexis 2019). The use of the term "malpractice claims" in the Medical Review Panel Act demonstrates the legislature knew how to limit the scope of a statute to malpractice claims. It did not include any such limitation in § 1-39-110 and we are not at liberty to read one into it. *See Qwest Corp. v. Pub. Serv. Comm'n of Wyo.*, 2007 WY 97, ¶ 25, 161 P.3d 495, 501 (Wyo. 2007) ("When the legislature specifically uses a word in one place, we will not interpret that word into other places where it was not used." (citation omitted)); *Merrill v. Jansma*, 2004 WY 26, ¶ 29, 86 P.3d 270, 285 (Wyo. 2004) ("A basic tenet of statutory construction is that omission of words from a statute is considered to be an intentional act by the legislature, and this court will not read words into a statute when the legislature has chosen not to include them." (citation omitted)); *Rodriguez*, ¶ 10, 50 P.3d at 327 ("We presume that the legislature acts intentionally when it uses particular language in one statute, but not in another.").

[¶30] Section 1-39-109 waives immunity for "damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation of any public hospital or in providing public outpatient health care." The Hospital claims this provision applies to "ordinary negligence claims arising out of hospitals." As a result, it contends § 1-39-110 cannot be interpreted as applying to ordinary negligence claims or it would improperly overlap with § 1-39-109 and render it superfluous. The Hospital also claims interpreting § 1-39-110 to waive immunity for ordinary negligence claims against health care providers produces an

absurd result. For example, it argues "such interpretation would mean that if a doctor is negligent while driving a motor vehicle while acting within the scope of his duties and 'in providing a service for state institutions,' [§ 1-39-110] would effectively quadruple the applicable [liability] cap because a claimant would be able to invoke [§ 1-39-110's $1,000,000] statutory cap instead of the general statutory cap [of $250,000] under [§1-39-118(a)(i)]."

[¶31]   Sections 1-39-109 and 1-39-110 may overlap but each statute covers actors the other does not. *Compare* § 1-39-109 ("all public employees in the operation of any public hospital") *with* § 1-39-110 ("health care providers who are employees of the governmental entity"). As a result, interpreting § 1-39-110 to apply to ordinary negligence claims does not render § 1-39-109 superfluous. Moreover, that §§1-39-109 and 1-39-110 may overlap does not necessarily produce an absurd result. A defendant's conduct often leads to multiple overlapping claims sounding in tort, contract, and equity, each of which may provide for a different level of damages. *See, e.g., Rammell v. Mountainaire Animal Clinic, P.C.*, 2019 WY 53, ¶ 5, 442 P.3d 41, 44 (Wyo. 2019) (plaintiff's termination from employment led to claims for breach of express contract, breach of implied contract, tortious interference with contract, intentional infliction of emotional distress, and negligent infliction of emotional distress). In fact, we have previously recognized the Claim Act's provisions can overlap. *See DeWald v. State*, 719 P.2d 643, 645 (Wyo. 1986) (recognizing a law enforcement officer's operation of a motor vehicle in pursuit of a fleeing suspect may fall within either § 1-39-105 ("negligence of public employees while acting within the scope of their duties in the operation of any motor vehicle, aircraft or watercraft") or § 1-39-112 ("tortious conduct of law enforcement officers while acting within the scope of their duties")). *DeWald* was decided over 30 years ago. Since then, the legislature has not acted to eliminate the potential overlap of immunity waivers in the Claims Act. *See Harnetty v. State*, 2019 WY 21, ¶ 25, 435 P.3d 368, 373 (Wyo. 2019) ("'When this Court interprets a statute and the legislature makes no material legislative change in the provision thereafter, the legislature is presumed to acquiesce in the Court's interpretation.'" (quoting *In re ANO*, 2006 WY 74, ¶ 14, 136 P.3d 797, 801 (Wyo. 2006)).

[¶32]   Section 1-39-110's waiver of liability is not limited to medical malpractice claims.

## CONCLUSION

[¶33]   Because it does not involve the purely legal issue of whether the Hospital is immune from suit under the Claims Act, we dismiss the Hospital's appeal with respect to § 1-39-118 and proximate cause for lack of jurisdiction. We affirm the district court's denial of summary judgment based on § 1-39-110, concluding § 1-39-110's waiver of governmental immunity is not limited to medical malpractice claims.

**DAVIS, Chief Justice, specially concurring, in which FOX, Justice, joins.**

[¶34]   I agree with the majority opinion's resolution of the Hospital's claims on appeal.  I write separately because I believe that an interlocutory order rejecting a governmental defendant's immunity defense should be reviewed only pursuant to a writ of review.  I would therefore overrule our holding in *Watts* that such orders are directly appealable.

[¶35]   In *Park County*, we adopted the federal collateral order doctrine to allow a direct appeal from the denial of a defendant's motion to dismiss on the ground of qualified immunity.  *Park Cnty.*, 845 P.2d at 349 (citing *Mitchell*, 472 U.S. at 526, 105 S.Ct. at 2815).  Under that doctrine, an interlocutory order is considered final if three requirements are met.

> First, "the order must conclusively determine the disputed question;" second, it must "resolve an important issue completely separate from the merits of the action;" and third, it must be "effectively unreviewable on appeal from a final judgment."

*Mesa Oil, Inc. v. United States*, 467 F.3d 1252, 1254 (10th Cir. 2006) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978)).

[¶36]   In *Watts*, we extended that same right of direct appeal to interlocutory rulings denying a defendant's assertion of sovereign immunity.  *Watts*, ¶ 10, 177 P.3d at 796.  We did so based on our conclusion that "the same policies which favor an exception to the general rule in qualified immunity cases that summary judgment denials are not appealable apply to claims of governmental immunity."  *Id.*  On reexamination, I believe the parallels between qualified immunity and immunity under the Wyoming Governmental Claims Act are insufficient to warrant a direct appeal when a defendant's assertion of sovereign immunity is rejected by an interlocutory ruling.

[¶37]   At the outset, I believe it is important to distinguish federal appellate court jurisdiction from this Court's jurisdiction.  The collateral order doctrine is critical to an appeal from a federal interlocutory order because it is the sole basis for a federal appellate court's jurisdiction over such an appeal.  *Behrens v. Pelletier*, 516 U.S. 299, 305, 116 S.Ct. 834, 838, 133 L.Ed.2d 723 (1996).  If an interlocutory order does not satisfy the three requirements of the collateral order doctrine, a federal appellate court is without jurisdiction to review it.  *Id.*

[¶38]   We do not have the same restrictions on our jurisdiction.  Although generally only final judgments are appealable, we have discretion to grant review of an interlocutory order pursuant to a petition for writ of review.  *See* W.R.A.P. 13.01; 13.02.  For example, we have granted a petition for writ of review under circumstances where we observed that a

federal appellate court would have relied on the collateral order doctrine for jurisdiction. *Carlson v. Langdon*, 751 P.2d 344, 350 (Wyo. 1988) (reviewing order disqualifying attorney pursuant to writ and comparing that to federal court review under collateral order doctrine). In fact, before our decision in *Watts*, we routinely reviewed adverse rulings on governmental immunity pursuant to a writ of review or certiorari. *See Romero v. Hoppal*, 855 P.2d 366, 367 (Wyo. 1993); *City of Cheyenne v. Huitt*, 844 P.2d 1102, 1103 (Wyo. 1993); *City of Laramie v. Facer*, 814 P.2d 268, 269-70 (Wyo. 1991).

[¶39]   Thus, when we used the collateral order doctrine to allow a direct appeal from the interlocutory order in *Park County*, and extended that holding in *Watts*, we did so for policy reasons, not because our jurisdiction depended on it. I therefore disagree with the majority opinion that a governmental entity's immunity is effectively lost if we do not allow a direct appeal from an adverse interlocutory ruling.

[¶40]   The question then is whether the same policies that support allowing a direct appeal from an interlocutory denial of qualified immunity also support allowing a direct appeal from an interlocutory denial of governmental immunity. I do not believe so.

[¶41]   The defense of qualified immunity is implicated when a governmental official is sued in his or her personal capacity under 42 U.S.C. § 1983, the Civil Rights Act. *Boyer-Gladden v. Hill*, 2010 WY 12, ¶ 12, 224 P.3d 21, 27 (Wyo. 2010); *see also Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011). "Personal-capacity suits . . . seek to impose individual liability upon a government officer for actions taken under color of state law." *Boyer-Gladden*, ¶ 12, 224 P.3d at 27; *see also Johnson v. Bd. of Cnty. Comm'rs for Cnty. of Fremont*, 85 F.3d 489, 493 (10th Cir. 1996) ("Personal or individual capacity suits 'seek to impose personal liability upon a government official for actions he takes under color of state law[.]'") (quoting *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985)). Because in such cases the official will personally incur the costs of defending a judgment, the United States Supreme Court has recognized the need for qualified immunity.

> The public interest in deterrence of unlawful conduct and in compensation of victims remains protected by a test that focuses on the objective legal reasonableness of an official's acts. Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action. But where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken "with independence and without fear of consequences."

12

*Harlow v. Fitzgerald*, 457 U.S. 800, 819, 102 S.Ct. 2727, 2739,73 L.Ed.2d 396 (1982) (footnote omitted) (quoting *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967)).

[¶42]   More recently the Supreme Court explained:

> Qualified immunity is not the law simply to save trouble for the Government and its employees; it is recognized because the burden of trial is unjustified in the face of a colorable claim that the law on point was not clear when the official took action, and the action was reasonable in light of the law as it was. The nub of qualified immunity is the need to induce officials to show reasonable initiative when the relevant law is not "clearly established," *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *cf. Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); a quick resolution of a qualified immunity claim is essential.

*Will v. Hallock*, 546 U.S. 345, 353, 126 S.Ct. 952, 959-60, 163 L.Ed.2d 836 (2006); *see also Wyo. Guardianship Corp. v. Wyo. State Hosp.*, 2018 WY 114, ¶ 19, 428 P.3d 424, 433 (Wyo. 2018) (goal of qualified immunity is to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably") (quoting *Chapman v. Wyo. Dep't of Corr.*, 2016 WY 5, ¶ 21, 366 P.3d 499, 510 (Wyo. 2016)).

[¶43]   In contrast, any claim brought against a government employee under the Wyoming Governmental Claims Act is defended by the governmental entity at its expense, and any judgment is paid by the entity.  Wyo. Stat. Ann. § 1-39-104(b)-(c).  The concern with the effect of potential personal liability on an employee's willingness to act is therefore not the same as that under a section 1983 claim, against which qualified immunity is intended to protect. *See Collins v. Mem'l Hosp. of Sheridan County*, 521 P.2d 1339, 1343 (Wyo. 1974) (rejecting effect on government services as basis for government immunity and concluding that "the only substantial and tenable reason for the maintenance of this doctrine is the protection of the public funds or the so-called 'trust fund theory'") (footnote and citation omitted).  Thus, while I understand the need for the assurance a direct appeal may provide an individual sued in his or her personal capacity, I do not believe that need extends to an assertion of immunity under the Claims Act.

[¶44]   I would not hold that a government defendant should be forced to go to trial when its assertion of immunity is rejected.  I would instead hold that it should be required to justify the need for immediate appeal through a petition for writ of review.  As the Utah

13

Supreme Court observed in rejecting a government defendant's direct appeal from a discovery order:

> Our rules allowing discretionary review provide parties an opportunity to convince an appellate court that the issue raised is so important that review prior to full adjudication of the case is justified or that the order will escape review altogether if an appeal is not allowed. Utah appellate courts therefore have ample power to consider such an appeal if immediate review is appropriate.

*Tyler v. Dep't of Human. Serv.*, 874 P.2d 119, 120 (Utah 1994) (per curiam); *see also State v. Lopez*, 474 P.3d 949, 958 (Utah 2020) (adhering to *Tyler* and rejecting adoption of collateral order doctrine where discretionary review available); *Rivera v. Washington*, 784 S.E.2d 775, 780 (Ga. 2016) (rejecting direct appeal of adverse interlocutory ruling on sovereign immunity where discretionary procedure provided ample opportunity for review); *Hinds Cnty. v. Perkins*, 64 So.3d 982, 988 (Miss. 2011) (rejecting direct appeal of adverse interlocutory ruling on sovereign immunity because review under collateral order doctrine is no more efficient than permissive review); *Ex parte Franklin Cnty. Dep't of Human Res.*, 674 So.2d 1277, 1280 (Ala. 1996) (rejecting collateral order doctrine as basis for direct appeal where permissive review "provides an adequate remedy for a state agency or employee seeking review of a lower court order denying a claim of sovereign immunity").

[¶45] I believe that *Watts* provided a solution to a nonexistent problem. As one Alabama Supreme Court justice observed under similar circumstances:

> This Court has not been presented with evidence that claims of immunity are falling on deaf ears, that petitions for permission to appeal are not being adequately considered, or that State agencies or employees are being forced into long and costly litigation in instances where the trial court should have accepted an immunity claim. In the absence of such evidence, to adopt a right of immediate appeal would be to solve a nonexistent problem.

*Ex parte Franklin Cnty.*, 674 So.2d at 1280-81 (Cook, J., concurring).

[¶46] *Watts* did not identify any particular problem government defendants have faced in obtaining review of adverse immunity rulings, and the Court in fact noted our practice of reviewing such cases pursuant to a writ of review. *Watts*, ¶ 10, 177 P.3d at 796. Indeed, I believe that the petition for review avoids problems a direct appeal can create and that it better serves our goals of judicial economy and avoiding delay. First, it is more time-

consuming to dismiss an appeal after full briefing, as we have done here, than it would be to deny an inadequately supported petition for review. Additionally, if we grant review pursuant to a petition, we are better able to control the briefing. We can determine the precise legal issue(s) on which briefing will be permitted, which will conserve judicial resources, as well as those of the responding party.[4]

[¶47] As a final note, I disagree that the majority opinion should address whether immunity under the Wyoming Governmental Claims Act is immunity from suit or immunity from liability. Federal appellate courts concern themselves with this distinction because it defines their jurisdiction. *See Tiscareno v. Anderson*, 639 F.3d 1016, 1020 (10th Cir. 2011), *partially vacated on other grounds,* 421 Fed. App'x 842 (10th Cir. 2011) ("The critical question in determining if interlocutory review based on state immunity is appropriate is whether state law confers 'a right not to stand trial.'") (quoting *Decker v. IHC Hosp., Inc.*, 982 F.2d 433, 436 (10th Cir. 1992)). In contrast, our discretion to grant a writ of review to consider a government defendant's interlocutory appeal from an adverse immunity ruling is not dependent on whether the immunity is from suit or liability, and the question therefore does not require an answer. *See Romero*, 855 P.2d at 367; *City of Cheyenne*, 844 P.2d at 1103; *City of Laramie*, 814 P.2d at 269.

[¶48] This Court has never been squarely presented with the question of whether immunity under the Claims Act is from suit or liability, and it was not presented or briefed in this case. I would save the question for another day when the case before us requires that we answer the question, which is likely to be on certification from a federal appellate court, the jurisdiction of which hinges on the answer. *See Mecham v. Frazier*, 193 P.3d 630, 632-33 (Utah 2008) (addressing whether its governmental immunity is from suit or liability as a matter of first impression on certification from the Tenth Circuit Court of Appeals).

---

[4] The right to immediate appeal of right as it now exists under *Watts* applies to claims made against all governmental entities. Some of those entities, notably public hospitals, obtain insurance against malpractice claims, and the insurance carriers provide a defense as well as indemnity. The ability to delay resolution of a case in the trial court creates settlement leverage that can be exploited by an entity or its insurance carrier. I have complete faith in this Court's ability to identify those cases in which there is a legal issue justifying immediate review, while I am more dubious about the ability and willingness of entities and their insurance carriers to toe the line created by the majority opinion.